Barrett, J.
There can be but little "doubt as to the scope of the order of reference when all the circumstances are considered. The court, in discharging Rand and *735 appointing Callan in his place, simply registered the will of the parties to the litigation. It acted, as it has acted throughout, upon their express consent. The creditors were neither heard nor notified; and the parties have dealt with the estate, have transferred it from receiver to receiver, and have utilized the machinery of justice precisely as though there were no creditors having rights to be submitted or considered. It is quite clear that the order entered upon the consent of these parties, without notice to creditors, discharging Rand without any preliminary ac ■ counting, and simply upon his turning over to Callan such property as he had taken the trouble to secure, is not binding upon those creditors who now come in and seek to charge him with property which he should have secured. As against the parties consenting to his discharge upon the terms indicated, Rand was discharged. As to creditors, however, who were no parties to the proceeding, his entire conduct as receiver is open to investigation. The order of reference covered the taking and stating of his account, and permitted all parties interested to offer evidence and to be heard thereon. If then it appears from such accounting, that, in addition to what he has turned over to Callan, Rand is properly chargeable with assets sufficient to pay the creditors who have appeared and contested his account, he cannot escape under the order of discharge, but must be required to saisfy these creditors.
The first question to be determined is, whether Rand is liable to the creditors, whose claims ante-date his appointment. There is no question as to his liability for debts contracted during the existence of his receivership. As to prior claims, his liability depends upon the existence of a trust relation. A proper solution of this question requires a consideration of the existing status when Rand was appointed. Hawley D. Clapp and his son Robert were conducting the business of keeping the Rossmore Hotel in this city when Hawley died. Under his will, Robert, and another son, Mortimer, were appointed executors. It was substantially provided in the will that the hotel business should be continued, and Robert, as executor—he being likewise surviving partner—did so continue it. This action was subsequently brought by the widow against Robert, as such executor, and also, individually, as such surviving partner, charging him with negligence, improvidence, mismanagement and misappropriation, and praying for an accounting as executor, and, also, as surviving partner; also, for the appointment of a receiver, etc. Upon the commencement of this action and upon the consent of all parties, including widow, heirs, next of kin, legatees, executors and surviving partner, Rand was appointed receiver of all the per *736 sonal property of which Hawley D. Clapp, deceased, died possessed, and also of the good will, furniture, fixtures, property and stores of the co-partnership, with full power to continue the management of the Rossmore Hotel until such time as the court, “may determine, or until such time as it may be thought judicious to have the same sold, and to liquidate thé accounts of the said executors.”
It will thus be observed that Robert Clapp was not carrying on the hotel business after his father’s death in his individual capacity. As surviving partner he had no such power, except, for the purposes of liquidation. It was as executor under the provisions of the will that he was acting in all new business. Now it appears that he was indebted to people who had furnished the hotel with supplies, between the time of his father’s death and the date of Rand’s appointment, in some $12,000, and the question under consideration is raised by some of these still unpaid creditors. It seems clear to me that the claims of these creditors attached to the executorial office, and were not mere personal obligations of Mr. Robert Clapp. The estate was managing and keeping the hotel under the provisions of the will, and the people who then furnished it with supplies had a right to look to the estate for payment. That being the case, the estate passed to Rand as receiver, subject to this equity, and the parties could not deprive them of it by transferring the estate from the office of executor to the office of receiver. Whatever business was done as surviving partner was subject to a like equity. Thus Rand, by virtue of the order made in this action—founded as it was upon charges sufficient for the removal of the executor and the enjoining of the surviving partner (as substantially conceded by the consent to the receiver’s appointment)— plainly stepped into the executor’s and surviving partner’s shoes and took the estate subject to existing claims against the executors as such; that is, against the estate itself. These creditors, therefore, may call him to account, and are entitled to payment out of what is or should be in his hands. They are not deprived of their rights by his refusal to regard them, nor because of their long continued patience.
But while I am unable to concur with the learned referee upon this and several other questions, I fully concur with him in charging the receiver with the board of the Clapp family and of Mr. Crosby. The conduct of the receiver in these particulars is wholly indefensible. Ignoring the existing creditors entirely and creating a fresh crop under his own management, he permitted the people who arranged his appointment, to consume, without compensation, the supplies furnished upon the credit of his trust estate. Thus *737 the receivership was set up as a barrier against those creditors who had fed this family in the past and was then used as a means of including a continuance, by confiding tradespeople of their unconscious bounty. A more disgraceful condition of things is rarely brought to the attention of the court. But for this receivership, it is plain that every creditor of the continuing business would have been paid in full. There was ample property with which to pay them. But if the law had been permitted to take its course, it might have been necessary to close the hotel or to sell it to some outside party. This undoubtedly did not suit the. purposes of the Clapp family; and it was then that, by arrangement between themselves, a court of equity with its receiver was interposed between the creditors and their common law rights; and now it is seriously claimed that these creditors were thus shut out altogether, while the people who effected this injustice, unembarrassed by their clamor, continued to live freely at the table of the estate.
The error which pervades the argument of the receiver’s counsel and which renders the . cited cases inapplicable—indeed the error which permeates the entire course pursued by the receiver—is in treating the present receivership as merely placing the hotel property in the hands of a temporary custodian.
The statement which I have given of the nature of the action, the parties, the averments of the complaint, the prayer, and the order made thereon by consent, point to a very different condition of things. Mr. Band was clearly made the receiver of two estates, first, that of Hawley XX Clapp, deceased, then held by his executors; and, second, the partnership estate of Hawley D. Clapp & Son, then in the hands of the surviving partner, Robert. What was he to do with these estates? The order distinctly informed him. The partnership estate was to be taken possession of “with full power to continue the management” of the hotel. The executorial estate was likewise, from every fair inference derivable from the various clauses of the order, to be taken possession of, and the receiv was expressly empowered “toliquidate the accounts oi the said executors of Hawley D. Clapp, deceased.”
What else, it may be asked, could the executors have meant by consenting through their counsel (as expressed upon the face of the order) to the appointment of a receiver of the very property then held by them as executors ? What else could they have meant by consenting to have their accounts as executors liquidated by the receiver thus appointed ? That, too, in an action seeking this very relief because of the improvidence, mismanagement and misap *738 propriation of one of their number who was charged with excluding all the other persons interested in the estate (including his co-defendant, the other executor) from lot or part therein.
The order thus consented to under such circumstances was plainly a cognovit and was almost equivalent to a final judgment removing the executors. However that may be, it is certainly impossible to treat such a receiver as a passive custodian, with no active duties in the. direction of reducing the estates to his possession. It was, beyond all question, his imperative duty to use proper diligence to secure the property, both of Hawley D. Clapp, deceased, and of the partnership of Hawley D. Clapp & Son.
He contented himself with taking possession of the hotel and conducting it a serious loss. His neglect to obtain possession of any other property was systematic and deliberate, in this, that he knew of the existence of such property and remained passive because, as he says, he was advised that it was not necessary to be active. The advice was bad and, while it might shield him from criminal responsibility, cannot avail to protect him from the demands of those who have a pecuniary interest in the due administration of his trust and his obedience to the orders of the court. Especially is this the proper rule in the case of an officer of the court who need not lean upon the advice of counsel in a doubtful case, but who may, at all times, apply to the court for advice and instructions.
Here the receiver never reported to the court, never asked its instructions, and never sought its advice. The only occasion when the receiver appears to have presented himself was upon an application to discontinue this action, which, if successful, would have resulted in his discharge. This application was opposed by his counsel and a grossly inaccurate affidavit of the receiver filed, in which he declared that the hotel had been run at a profit. The receiver now claims that he was deceived, and that the error was unintentional. I am quite willing to yield to his explanation, and would be sorry to charge him with intentional falsehood. Unfortunately, however, the explanation only adds to the long line of inattention to his duties which the record discloses, inattention which has seriously prejudiced those whom it was his duty to protect.
This very affidavit deceived the court upon the hearing of the motion, and probably aidéd in continuing a state of affairs which would have been summarily stopped if the court had then been furnished with the truth. In fact, the receiver should have reported to the court at an earlier date that he was conducting the business at a loss, and have taken instructions as to its continuance or discontinuance. *739 He, cannot now shield himself under the advice of Mr. Crosby, who should not, under any circumstances, in view of his professional relations with Robert 0. Clapp, have been consulted.
And this brings me to the question of the receiver’s commissions and of Mr. Crosby’s charge. Neither should have been allowed. It was highly improper that the counsel for Robert C. Clapp should have acted as counsel for the receiver. The latter was appointed because of Robert 0. -Clapp’s misappropriation of trust moneys, and it became the receiver’s duty, immediately upon his qualification, to familiarize himself with the details of this misappropriation and to pursue the guilty executor with all proper remedies. How was it possible to do his duty in this regard through the agency of Robert C. Clapp’s own counsel —the very counsel who on behalf of Clapp (and with knowledge of the charges against him in the complaint) consented to the appointment of the receiver, and who in a‘ ° subsequent proceeding in the surrogate’s court for Clapp’s removal, defended him throughout ?
Clapp, in this surrogate’s court proceeding, was found to have drawn over $15,000 improperly from the estate, yet the receiver never took steps to collect a penny from him, doubtless because his own chosen counsel, who, as I have said, was Clapp’s defender, deemed the report of the referee in that proceeding and the surrogate’s decree made upon if (as he here testifies) “an infamy.”
Not only was the employment of Mr. Crosby improper, but the advice given cannot be countenanced. He should have seen to it that his client did what was fairly in his power to obtain possession of what was covered by the order. If in doubt upon that head he should have applied for instructions. He should certainly not have permitted the Hawley bond and mortgage case; the steam heating companies stock, the offers for the lease and the claim against Robert C. Clapp to remain entirely unnoticed. He should not have permitted his client, without protest from him, to allow the Clapp family to run up a bill of over $12,000 far board. He should not have permitted himself to run up a similar bill for over $2,000. He should have insisted upon periodical reports to the court. He should especially have advised a report as to the losses in keeping up the hotel. And finally, he should never have been a party to the transaction whereby Rand was discharged and Callan, appointed, with all its accompanying circumstances—a fitting culmination, let me say without further comment, to all that preceded.
In all these particulars as well as in others that might be enumerated, the receiver was grossly derelict. To allow *740 him any compensation, whatever, would be to offer a premium upon both culpable negligence and active misconduct of a sufficiently flagrant description. All compensation must, therefore, be disallowed. So must Mr. Crosby’s bill for services as counsel. The receiver must be charged, as reported by the referee, with the amount due by the Clapp family and by Mr. Crosby; for board. If the sums with which he is thus charged, increased by the disallowance of compensation and, also, by the disallowance of Mr. Crosby’s charges, are sufficient to satisfy all the creditors— those before as well as those subsequent to the appointment of Mr. Rand—it will be unnecessary to affirmatively charge the receiver with the sums resulting from the matters which have been discussed. Otherwise he must be charged with sufficient to satisfy all such creditors.
In either case- the exceptions to the findings of the referee in these particulars must be sustained and an order made declaratory of the views which I have expressed. Where my views do not cover every specification, it is intended to sustain the position taken in the exceptions filed by Messrs. Holt and Brown, and the order may be formulated acordingly.
It should be carefully settled upon notice, and should require the payment directly to the creditors in question of the full amount of their respective claims.